UNITED STATES of America, Plaintiff,

v.

**Harold D. HORAK, Defendant.**

**Crim. No. 79-0-2.**

United States District Court,
D. Nebraska.

Feb. 23, 1979.

Guy L. Goodwin and Daniel E. Fromstein, Dept. of Justice, Washington, D. C., for plaintiff.

Frank F. Pospishil and William H. Coates, Omaha, Neb., for defendant.

## MEMORANDUM

DENNEY, District Judge.

On January 26, 1979, a federal grand jury returned an eight count indictment against Harold D. Horak, the chief security officer for Pamida, Inc. Four of the counts relate to the illegal interception and disclosure of wire or oral communications of the employees of Pamida, in violation of various sections of 18 U.S.C.A. § 2511(1) (1970). The remaining counts allege perjury before the grand jury, in violation of 18 U.S.C.A. § 1623 (Cum.Supp.1978).

On February 13, 1979, the United States filed a motion for a determination of a possible conflict of interest on the part of defense counsel. The prosecution desires to have this Court rule upon its motion prior to the commencement of any discovery by Mr. Horak's retained counsel, Frank F. Pospishil and William H. Coates, both members of the Omaha law firm of Abrahams, Kaslow and Cassman.

The alleged conflict arises from the undisputed fact that the firm of Abrahams, Kaslow and Cassman is general corporate counsel for Pamida, Inc.. Mr. Horak is presently employed by Pamida, and was in charge of the company's security when the events charged in the indictment allegedly occurred. Moreover, this law firm represented various corporate officers and employees of Pamida who answered grand jury subpoenas and testified during the course of the investigation. The United States has indicated, through the verified motion of one of the prosecutors, that several of the employees and corporate officers of Pamida who were represented by Abrahams, Kaslow and Cassman during the grand jury proceedings may be subpoenaed as government witnesses at trial. A further complication arises from the fact that the grand jury investigation into possible involvement of other corporate employees and Pamida itself has not been completed.

A hearing upon the government's motion was held on February 21, 1979. The defendant was put under oath and questioned extensively by the Court on the issue of waiver of the potential conflict of interest. This procedure satisfied the Court's affirmative duty to establish an adequate record in this regard. *United States v. Lawriw*, 568 F.2d 98, 105 (8th Cir. 1977), *cert. denied* 435 U.S. 969, 98 S.Ct. 1607, 56 L.Ed.2d 60 (1978).

During the inquiry, Mr. Horak demonstrated his awareness of the nature of the illegal wiretap charges and the maximum penalty involved on all of the counts of the indictment. The Court explained the possibility that defense counsel might not engage in a sufficiently thorough cross-examination of Pamida's officers and employees out of a hesitancy to offend or embarrass a corporate client. Mr. Horak acknowledged that he understood the problem, and related his past experiences with defense counsel. The defendant stated that he had worked with his present attorneys in the past, and felt comfortable with their representation. Mr. Horak further testified that he desired Abrahams, Kaslow and Cassman to continue representing him in his defense, despite the possibility of conflicting interests.

The Sixth Amendment to the Constitution of the United States guarantees a criminal defendant effective assistance of counsel. This right extends to the situation where defense counsel is faced with conflicting loyalties. *Holloway v. Arkansas*,

435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978); *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). The right is most often raised in a postconviction appeal from a trial in which multiple criminal defendants are jointly represented by a single attorney. *See, e. g., Beran v. United States*, 580 F.2d 324 (8th Cir. 1978).

■ No *per se* violation of the right to effective assistance of counsel takes place solely because of joint representation of codefendants by one attorney. *United States v. Valenzuela*, 521 F.2d 414, 416 (8th Cir. 1975), *cert. denied* 424 U.S. 916, 96 S.Ct. 1117, 47 L.Ed.2d 321 (1976). In the joint representation situation, a federal circuit court will not usually reverse on Sixth Amendment grounds where the appellant has knowingly and voluntarily waived his right to separate counsel. *See, e. g., United States v. Swanson*, 509 F.2d 1205, 1210 n. 7 (8th Cir. 1975); *Larry Buffalo Chief v. South Dakota*, 425 F.2d 271, 280 (8th Cir. 1970).

The First Circuit has addressed the distinction between joint representation of codefendants and dual loyalties where an attorney representing an accused criminal has a present legal relationship with a government witness. *United States v. Di Carlo*, 575 F.2d 952 (1st Cir. 1978), *cert. denied*, —— U.S. ——, 99 S.Ct. 115, 58 L.Ed.2d 129 (1978); *Miller v. United States*, 564 F.2d 103 (1st Cir. 1977), *cert. denied* 435 U.S. 931, 98 S.Ct. 1504, 55 L.Ed.2d 528 (1970). The *Di Carlo* court states, as a general proposition, that the dangers of a conflict of interest are greater in the context of joint representation than dual loyalties. A greater showing, such as "a real conflict of interest or a specific instance of prejudice", must be made in the latter situation. *United States v. Di Carlo*, 575 F.2d at 957. *Cf. Glasser v. United States*, 315 U.S. at 75–76, (no precise measurement of prejudice necessary in joint representation case). A convicted defendant has a further burden to carry if the conflict of interest was actually known to him from the beginning. *United States v. James*, 505 F.2d 898 (5th Cir. 1975), *cert. denied* 421 U.S. 1000, 95 S.Ct. 2397, 44

L.Ed.2d 667 (1975); *District of Columbia v. Scott*, 94 U.S.App.D.C. 227, 214 F.2d 860 (1954). A formal interrogation of a criminal defendant by a court, which results in a recognition and waiver of ineffective assistance of counsel presents an even more formidable obstacle for a would-be appellant. *Cf. Castillo v. Estelle*, 504 F.2d 1243 (5th Cir. 1974) (trial court reversed where defendant's counsel represented victim of crime in unrelated civil litigation without informing defendant of the conflict).

■ The question that faces this Court now is whether the potential for a prejudicial conflict is so great that defense counsel should be required to withdraw despite Mr. Horak's waiver on the record. This Court has the power to require such a withdrawal, and a concomitant duty to exercise it "where there is a serious possibility that a definite conflict of interest will arise." *United States v. Bernstein*, 533 F.2d 775, 788 (2d Cir. 1976), *cert. denied* 429 U.S. 998, 97 S.Ct. 523, 50 L.Ed.2d 608 (1976). *Accord, Abraham v. United States*, 549 F.2d 236, 239 (2d Cir. 1977).

■ The Court concludes that an order requiring defense counsel to withdraw prior to the initiation of discovery would be premature. Only one indictment has been returned at this time. No specific showing of prejudice has been made. Without such a showing on a post-trial appeal, no relief is attainable. The attorneys for the defendant have executed an affidavit, based upon interviews with Pamida employees prior to their appearances before the grand jury, which indicates that none of these potential prosecution witnesses have information pointing to Horak's guilt. The Eighth Circuit, in a joint representational situation, has given weight to these types of assertions by defense counsel, who are "in the best position professionally and ethically to determine when a conflict of interests exists or will probably develop in the course of a trial." *United States v. Cox*, 580 F.2d 317, 322 (8th Cir. 1978). A further policy that underlies the Court's decision is the idea that, in our system of justice, "defendants are free to employ counsel of their own choice and the courts are afforded little leeway in interfering with that choice."

*United States v. Cox*, 580 F.2d at 321. *Accord, United States v. Armedo-Sarmiento*, 524 F.2d 591 (2d Cir. 1975) (refusal of trial court to allow waiver reversible error).

This holding does not mean that the conflict of interest question should be considered settled for the rest of this case. Both counsel and the Court should be alert for developments that could compromise Mr. Horak's representation. Illustrative of one problem area is *United States v. Bernstein*, 533 F.2d at 788, where an employee asserted that her fraudulent acts were undertaken at the behest of her superiors, while the employers accused the employee of acting on her own. Defense counsel should also be vigilant in their ethical duty to preserve attorney-client confidences. It is also possible that Pamida employees interviewed by defense counsel may change their previous statements and eventually present evidence harmful to Mr. Horak. Other true bills may be returned by the grand jury. Cooperation between counsel and the Court in identifying and meeting these types of problems as soon as they become apparent will insure the defendant a fair trial and promote the establishment of a record free from errors of constitutional magnitude.

An order shall be entered in accordance with this Memorandum Opinion.