NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0340n.06

No. 22-1557

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Jul 24, 2023
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| LASAIL HAMILTON, | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellant. | ) | |
| | ) | OPINION |
| | ) | |
| | ) | |

Before: MOORE, ROGERS, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Lasail Hamilton was convicted by a jury of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). He now challenges that conviction, arguing the government presented insufficient evidence and the district court should have given the jury a limiting instruction about his grandmother's prior inconsistent statements. We affirm.

I.

Hamilton drew the attention of law enforcement in the summer of 2020. Hamilton's public social media accounts revealed he possessed a gun he was not permitted—as a felon—to possess. More specifically, Hamilton posted a video to his Facebook account showing him smoking a cigar with a black and silver pistol tucked into the waistband of his pants. He posted a similar image on his Instagram account, with the same pistol tucked into his pants and a second "AR-style pistol in

his hand." In the caption of a third photo, Hamilton referred to a specific brand of cigars he favored: Wood cigars.

Law enforcement suspected that Hamilton lived at 72 Orchard Street in Mount Clemens, Michigan—that was the address on his driver's license (issued in July 2020) and Hamilton had referred to the address in Facebook conversations. After officers physically surveilled the Orchard Street home and observed Hamilton there twice, they obtained and executed a warrant to search the home in September 2020.

In the basement, officers discovered mail addressed to Hamilton; a bed; Wood cigars; and male deodorant, clothing, and shoes. And in a dresser near the bed, officers located a black and silver firearm. Two ATF agents testified that the recovered firearm was, in their opinion, either the weapon depicted in Hamilton's Facebook video and Instagram photo or, at least, the same make and model of firearm.

Linda Hamilton, defendant's grandmother, was present during the search. At trial, she confirmed that she lived at 72 Orchard Street and that she was home when officers executed the search warrant. Linda told the jury she had no memory of speaking with anyone while the search was occurring, despite being interviewed by an ATF agent during the search. She agreed that Hamilton had lived in her basement, but she explained that he had moved out in 2019 and had not lived with her since. Linda testified that, since Hamilton moved out, she often hosted family and visitors who would stay in the basement. And she admitted that she owned an illegal firearm, and claimed she did not know whether Hamilton kept a firearm in her home.

After that testimony, the government impeached her credibility by introducing a statement about his possessing a weapon: she told officers during the search, "I think, ah, he, ah, my, ah, he had one in there hid somewhere." She tried to walk that statement back at trial, clarifying that

"he" referred to her former romantic partner, not her grandson. But the government noted, and Linda acknowledged, that the interviewing agent had asked her specifically "about Lasail Hamilton," not "about [her] lover or [her] boyfriend."

On this and other evidence, the jury found Hamilton guilty of being a felon in possession of a firearm. The district court sentenced him to 46 months' imprisonment. Hamilton timely appealed.

## II.

Hamilton argues that there was insufficient evidence to support his conviction. Such a claim "faces a high bar" on appeal. *United States v. Persaud*, 866 F.3d 371, 379–80 (6th Cir. 2017). We must uphold the jury's conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Circumstantial evidence alone is enough to support a conviction. *United States v. Lindo*, 18 F.3d 353, 357 (6th Cir. 1994). We cannot "weigh the evidence presented, consider the credibility of witnesses, or substitute our judgment for that of the jury." *United States v. Jackson*, 470 F.3d 299, 309 (6th Cir. 2006) (citation omitted). Rather, we "draw all available inferences and resolve all issues of credibility in favor of the jury's verdict." *Id*. (citation omitted).

A wealth of evidence supported the jury's verdict that Hamilton possessed a firearm. The government presented several posts from Hamilton's public social media accounts showing him possessing a firearm similar in all material ways to the one recovered from the basement of the Orchard Street home. In one post, Hamilton was smoking the same brand of cigar found in the Orchard Street basement, which, along with the mail, men's clothing, and men's deodorant found there, bolsters the reasonable inference that Hamilton lived there. If this was not enough,

Hamilton's reference to the Orchard Street address on Facebook, his use of the address when he renewed his driver's license in July 2020 (as well as when he applied for a job in September 2020), and physical surveillance that showed Hamilton at the residence shortly before the search warrant was executed, together leave little doubt. That Hamilton introduced contrary theories (that the weapon was Linda's, that it belonged to one of her visitors or her partner, or that it was a replica) does not change this conclusion, because we must view the evidence in the light most favorable to the prosecution and resolve any doubts in the government's favor. Thus, a rational juror could have reasonably concluded that Hamilton possessed the weapon recovered from his grandmother's home.

III.

Hamilton also argues that the district court erred by not giving the jury a limiting instruction regarding Linda's prior statements that he "had [a gun] in there hid somewhere" and that he "stay[ed] there pretty regularly" after moving out in 2019.[1] Hamilton claims that, as these out-of-court statements are inadmissible as substantive evidence of the crime, the jury should have been instructed to consider them only for impeachment purposes. But because Hamilton twice stipulated to the jury instructions rather than objecting to them, we review this claim only for plain error. *See United States v. Barrow*, 118 F.3d 482, 490–91 (6th Cir. 1997). Hamilton must show (1) an error (2) that was plain, (3) that affected his substantial rights, and (4) that affected the

---

[1]Hamilton identifies a third statement that was allegedly inconsistent: that he stayed in the basement. But given Linda's direct testimony that Hamilton had lived with her and "stay[ed] in the basement," this prior statement was not inconsistent.

fairness, integrity, or public reputation of the judicial proceedings. *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc).[2]

A witness's prior inconsistent statements are admissible to impeach, but are not admissible as substantive evidence of the crime. *Bridges v. Wixon*, 326 U.S. 135, 153 (1945); *United States v. Lester*, 491 F.2d 680, 682 (6th Cir. 1974). However, a district court's failure to instruct a jury on this limitation is plainly erroneous only where the evidence presented during the impeachment process is, "in large measure," the government's only evidence of the crime. *United States v. Hernandez*, 227 F.3d 686, 697 (6th Cir. 2000) (quoting *United States v. Lipscomb*, 425 F.2d 226, 227 (6th Cir. 1970)); *see also Lester*, 491 F.2d at 683 (finding plain error where the prior inconsistent statement was the government's *only* direct evidence against the defendant). As discussed above, the government presented sufficient evidence to convict Hamilton even excluding his grandmother's statement. Linda's testimony was not the whole—or even the majority—of the case against him. In turn, the court's failure to give a limiting instruction did not affect his substantial rights, and he has not shown plain error. *See Hernandez*, 227 F.3d at 697.

IV.

For these reasons, we affirm the judgment of the district court.

---

[2]The government argues that the invited-error doctrine applies to Hamilton's argument. An invited error may be reviewed for plain error only "when the interests of justice demand it." *United States v. Montgomery*, 998 F.3d 693, 698–99 (6th Cir. 2021) (quotation marks omitted); *see also Barrow*, 118 F.3d at 490–91. Because the contours of "manifest injustice" are hazy, *see Montgomery*, 998 F.3d at 699, and the bounds of plain error are well-settled in this context, we assume without deciding that we may review Hamilton's claim. In any event, as explained, his claim fails whether we review it or not.